# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

JAMES MALLORY                                                             PLAINTIFF

v.                                                     CIVIL ACTION NO. 3:19-CV-P120-CRS

MARK BOLTON *et al.*                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this 42 U.S.C. § 1983 *pro se* prisoner civil-rights action in Jefferson Circuit Court. This matter is before the Court for screening of the complaint (DN 1-1) and amended complaint (DN 8) pursuant to 28 U.S.C. § 1915A. For the following reasons, the Court will dismiss some claims but will allow others to proceed.

## I. PROCEDURAL HISTORY

Plaintiff is incarcerated as a pretrial detainee at the Louisville Metro Department of Correction (LMDC). In the complaint, Plaintiff named as Defendants ten LMDC officials (collectively, the "Metro Defendants"), as well as three individuals employed by the private entity that has contracted to provide medical services to inmates at LMDC (collectively, the "Medical Defendants").[1] Defendants removed the action to this Court based on federal question jurisdiction. Shortly thereafter, the Metro Defendants moved to dismiss Plaintiff's complaint against them pursuant to Fed. R. Civ. P. 12(b)(6). On May 2, 2019, the Court entered a Memorandum Opinion and Order granting this motion but providing Plaintiff 30 days in which to file an amended complaint. Plaintiff filed his amended complaint on May 22, 2019. On May

---

[1] The Metro Defendants are Mark Bolton, Dewayne Clark, Steve Durham, Martin Baker, Katreese Walker, Tmeka Wingate, Christopher L. Wedding, Jason Logsdon, Robert Brown. The Medical Defendants are Regina Reese Davis, Kevin Smith, and Rachel White. Plaintiff added LMDC official Michael Redmon as a Defendant in his amended complaint.

26, 2019, the Medical Defendants filed a motion to screen the complaint and amended complaint pursuant to 28 U.S.C. § 1915A, which the Court granted by Order entered July 25, 2019. Thus, the Court will now screen the complaint and amended complaint as to the claims set forth against the Medical Defendants and screen the amended complaint as to the claims set forth against the Metro Defendants.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 544 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia*

*Natural Res., Inc*. *v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v*. *Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. CLAIMS AGAINST THE MEDICAL DEFENDANTS IN THE COMPLAINT AND AMENDED COMPLAINT

As indicated above, the Medical Defendants named in the complaint are Regina Reese Davis, "Medical Provider"; Kevin Smith, "Doctor"; and Rachel White, "Psych Doctor." Plaintiff does not indicate in what capacity he sues them. In the amended complaint, Plaintiff names only Dr. Kevin Smith and Rachel White as Defendants and indicates that he is suing them in both their official and individual capacities.

3

### 1. Official-Capacity Claims

Plaintiff's official-capacity claims against the Medical Defendants are actually against their employer, which is ostensibly the private entity that has contracted to provide medical services to inmates at LMDC. The Sixth Circuit has held that the same analysis that applies to § 1983 claims brought against municipalities applies to private corporations contracted to provide medical services to inmates. *See, e.g.*, *Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (recognizing that a "*Monell* custom or policy claim" can be brought under § 1983 against a private corporation that provides medical care to inmates); *see also Braswell v. Corr. Corp. of Am.,* 419 F. App'x 622, 627 (6th Cir. 2011) (applying *Monell*'s municipal liability standard to the private corporation that had been contracted to operate a jail) (citing *Street v. Corr. Corp. of Am.*, 102 F. 3d. 810, 814 (6th Cir. 1996)).

To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff does not claim that any alleged violation of his constitutional rights was the result of a custom or policy implemented or endorsed by the private entity that ostensibly employs the Medical Defendants. As such, the Court will dismiss Plaintiff's official-capacity claims against these Defendants for failure to state a claim upon which relief may be granted.

## 2. Individual-Capacity Claims

### a. Deliberate Indifference to a Serious Medical Need

In the complaint, Plaintiff alleges that he "has bleed from his rectum for several weeks with no proper medical attention never sent to an outside agency to this date of this actual lawsuit!" Plaintiff does not make this allegation in the amended complaint.

To establish a constitutional violation[2] premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. at 104). A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical

---

[2] The Eighth Amendment provides a convicted inmate the right to be free from cruel and unusual punishment, and the Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016)). The Sixth Circuit has "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id*. (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). At this time, the Sixth Circuit has recognized only one explicit exception to the general rule that rights under the Eighth Amendment are analogous to rights under the Fourteenth Amendment. This exception applies to excessive-force claims brought by pretrial detainees. *Id*.at 938 n.3 (noting that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogated the subjective-intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs claims by pretrial detainees may be shifting, but declining to apply the *Kingsley* standard to a claim of deliberate indifference to a serious medical need brought by a pretrial detainee); *see also Walker v. Miller*, No. 18-3209, 2018 U.S. App. LEXIS 29348, at *2 (6th Cir. Oct. 17, 2018) (continuing to apply the traditional standard to a deliberate-indifference-to-a-serious-medical-need claim brought by a pretrial detainee). In light of this jurisprudence, for purposes of this review, the Court will analyze Plaintiff's Fourteenth Amendment non-excessive-force claims under the traditional Eighth Amendment deliberate-indifference standard.

need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 832). Mere negligence will not suffice. *Farmer v. Brennan*, 511 U.S. at 835-36.

In its prior Memorandum Opinion and Order dismissing the claims set forth by Plaintiff against the Metro Defendants in the complaint, the Court observed that Plaintiff had failed to allege any facts connecting any particular Defendant to his claim regarding the denial of medical treatment or even that he had requested medical treatment for his rectal condition. It was for these reasons that the Court granted the Metro Defendants' motion to dismiss regarding this claim. Here, the Court finds that because the complaint and amended complaint likewise fail to connect any Medical Defendant to this claim, the claim must be dismissed for failure to state a claim upon which relief may be granted.

### b. The Health Insurance Portability and Accountability Act (HIPAA)

In both the complaint and amended complaint, Plaintiff also alleges that Defendant White violated his rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §§ 1320a *et seq*, by sharing medical information about him with other officials. The Sixth Circuit has stated that "although we have not held explicitly that there is no private right of action under HIPAA, express or implied, other circuits have so held." *Thomas v. Univ. of Tenn. Health Sci. Ctr.*, No. 17-5708, 2017 U.S. App. LEXIS 24714, at *4 (6th Cir.

2017) (citations omitted).  In *Thomas*, the Sixth Circuit upheld a dismissal for failure to state a claim and determined that "[i]f [the plaintiff] believes that her HIPAA rights were violated, the proper avenue for redress is to file a complaint with the [Department of Health and Human Services]." *Id*. (citing 45 C.F.R. § 160.306).  In light of this jurisprudence, the Court finds that Plaintiff fails to state a claim against Defendant White under HIPAA.

### c. Retaliation

In the amended complaint, Plaintiff alleges that Defendant Dr. Smith retaliated against him for filing the instant action.  He writes, "Dr. Smith stated since I wanna file lawsuits and put him in it he's not letting me get my hemorrhoid whipes any more are my dental floss and he (order) May 14, 2019, to remove all they had left from the med cart by the evening nurse."

A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (1999).

The Court will assume for purposes of this review that Plaintiff's allegation satisfies the first element of a retaliation claim.  As to the second element, "[a]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id*. at 396.  "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).  However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury. *Thaddeus-X,* 175 F.3d at 396 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).  "[T]his threshold is intended to weed out only inconsequential

7

actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id*. at 398. Indeed, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603 (citing *Thaddeus-X*, 175 F.3d at 398); *see also Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) ("[O]nly de minimis violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.").

Here, the Court concludes the denying Plaintiff "hemorrhoid whipes" and dental floss is so *de minimus* that it does not rise of the level of a cognizable constitutional injury and, thus, should be dismissed as a matter of law. As such, the Court will dismiss Plaintiff's retaliation claim against Defendant Smith for failure to state a claim upon which relief may be granted.

### d. Defendant Davis

Plaintiff fails to state a claim against Defendant Davis because he does not make specific allegations against her in the complaint or amended complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damages claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissing of plaintiff's claims for failure to state a claim

8

upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 U.S. App. LEXIS 30782, at *7 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 U.S. App. LEXIS 9928, at *3 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints.").

For the foregoing reasons, the Court will dismiss Plaintiff's complaint as to the Medical Defendants for failure to state a claim upon which relief may be granted.

### B. SCREENING OF AMENDED COMPLAINT AS TO METRO DEFENDANTS

In his amended complaint (DN 8), Plaintiff names the following LMDC officials as Defendants – Robert Brown, Michael Redmon, Mark Bolton, Steve Durham, Martin Baker, William Ashby, Christopher Wedding, Katreese Walker, Tmeka Wingate, Jerry Collins, and Jason Logsdon. He sues these Defendants in both their official and individual capacities.

#### 1. Official-Capacity Claims

As explained above, "official-capacity suits. . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 691 n.55). Thus, Plaintiff's official-capacity claims

against the Metro Defendants are actually against their employer, which is Louisville Metro. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

In the instant case, Plaintiff has failed to allege that any constitutional wrong he has suffered is the result of a policy or custom implemented or endorsed by the Louisville Metro Government. Thus, the Court will dismiss Plaintiff official-capacity claims against the Metro Defendants for failure to state a claim upon which relief may be granted.

## 2. Individual-Capacity Claims

### a. Retaliation

In the amended complaint, Plaintiff first alleges Defendant Ashby retaliated against him for filing this action by making the "SORT team come in my cell . . . in take (all) of my canteen products, family photos, paper, stamps, envelopes, magazine, and books" and "placed me illegally on SORT status and manage hour out where I'm only allowed 15 minute phone call and 10 minute shower." Plaintiff further alleges that he has been "deprive to call my lawyers for going on 2 solid months" and "every time SORT comes in Dorm [] I'm place and shackles and handcuffs the entire time I'm out my cell." Plaintiff also states that he has requested that Defendant Walker, the "classification director," to "remove me out of a single cell and why I'm on SORT and manage hour out . . . She replys your not coming off until [Defendant] Ashby says so and stop asking. . ." Plaintiff states that Defendants Bolton, Durham, Baker, and Wedding are in "cohoost" with Defendant Ashby with regard to this "cruel and unusual punishment." He also writes that he has been "retaliated against til the fullest extreme by the entire L.M.D.C staff."

10

Based upon these allegations, the Court will allow a First Amendment retaliation claim to proceed against Defendants Ashby and Walker in their individual capacities.

However, the Court finds that Plaintiff has failed to state a claim against Defendants Bolton, Durham, Baker, Wedding, and any other Defendants. It is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus*, 409 F. App'x 826, 835 (6th Cir. 2010); *see also Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (dismissal appropriate where the plaintiff failed to state any "plausible, non-conclusory facts to demonstrate that [the defendants] joined [the] conspiracy, shared in the conspiratorial objective, and/or committed specific acts in furtherance of the conspiracy"); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity") (citing *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987)) .

Here, construing the complaint liberally, plaintiff's factual allegations are insufficient to suggest that Defendants Bolton, Durham, Baker, Wedding or any other Defendant shared a conspiratorial objective with Defendant Ashby or otherwise planned together to retaliate against Plaintiff. Thus, the Court will dismiss Plaintiff's claims against Defendants Defendants Bolton, Durham, Baker, and Wedding for conspiring to retaliate against him for failure to state a claim upon which relief may be granted.

### b. Interference with Legal Mail

Plaintiff alleges that Defendants Ashby and Redmon have "made the mail lady [] copy my legal mail incoming and keep the original copy giving me the copy they made, letters from my lawyers, [orders] from the courts etc."

"In order to state a claim for denial of meaningful access to the courts . . . plaintiffs must plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *see also Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (holding that prisoner's claim for interference with access to courts through opening legal mail failed "as he alleged no prejudice to any pending litigation"). Thus, because Plaintiff does not allege that Defendants Ashby's or Redmon's conduct with regard to his legal mail has prejudiced him in any pending litigation, he fails to state a claim for denial of access to the courts.

However, the First Amendment also affords inmates the right to receive mail. *See Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Courts ascribe particular significance to this right when "legal mail" is involved, granting special protection to "correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). Despite these protections, though, prison officials may restrict a prisoner's right to receive mail if it is reasonably related to security or other legitimate penological objectives. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Sixth Circuit instructs that "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993). On the other hand, "prison officials who open and read incoming

mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Sallier*, 343 F.3d at 873-74 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)).

At this preliminary review stage, the Court will allow First Amendment claims to proceed against Defendants Ashby and Redmon in their individual capacities based upon interference with Plaintiff's legal mail.

### c. Canine Search and False Disciplinary Write-up

The Court next turns to Plaintiff's allegation that Defendants Ashby and Wedding "illegally sent K-9 dogs in my cell" on four occasions and that, on the last occasion, "SORT lied and claim they found spice parafilnia in a empty baggy that suppose been verified by the P.S.U. and [Defendant] Redmon in K-9 dog wrote me up then when I prove they was lying the write mysteriously disappear to this very day."

As to the cell searches, the Supreme Court has held that the search of a prisoner's cell does not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). According to the *Hudson* Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28.

Moreover, the Sixth Circuit has held that "[a] prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). For example, in *Jones v. McKinney*, No. 97-6424, 1998 U.S. App. LEXIS 32665, at *2-3 (6th Cir. 1998), the court held that the district court properly dismissed a prisoner complaint alleging prison officials

"deliberately issued a false disciplinary report against him." The *Jones* court noted that "[the prison official] did not violate [the prisoner's] constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused." *Id*. at *3.

In light of this jurisprudence, the Court will dismiss Plaintiff's claims based upon the canine searches and the false disciplinary write-up for failure to state a claim upon which relief may be granted.

### d. Strip Searches

Plaintiff next alleges that his rights were violated when he was "strip search on body camera and seen in the nude while I was on body camera that's in violation of strip search policy and procedure."

Claims based upon an illegal strip search are usually analyzed under the Fourth and/or Eighth Amendments. Plaintiff's allegation fails to give rise to a constitutional violation under either standard. *See, e.g.*, *Hubbert v. Myers*, No. 92-1232, 1993 U.S. App. LEXIS 21883 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants "conducted a strip search which was taped by a video camera operated by a female employee" in violation of the Fourth, Eighth, and Fourteenth Amendments); *Fatir v. Phelps*, No. CV 18-933-CFC, 2019 U.S. Dist. LEXIS 83547, at *7 (D. Del. May 17, 2019) (finding that using a camera to record a strip search does not render the strip search unconstitutional) (collecting cases); *Watley v. Pike Cty.*, No. 3:17-CV-1539, 2018 U.S. Dist. LEXIS 195662, at *30-31 (M.D. Pa. Nov. 16, 2018) (finding that video recording of strip search was reasonable because it served legitimate penological needs, such as "ensuring that the search was conducted in a proper manner, deterring against misconduct and false accusations of misconduct, and providing an

14

objective record of the events"); *Henderson v. Oats*, No. 4:17-cv-P155-JHM, 2018 U.S. Dist. LEXIS 73838, at *5-6 (W.D. Ky. May 1, 2018) ("[T]he Court finds that Plaintiff's allegation that he was strip searched in a drunk tank with a camera fails to establish a violation of his constitutional rights."); *Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 U.S. Dist. LEXIS 113190, at *15-16 (D.C. Colo. Aug. 26, 2015) (finding allegation that the plaintiff was "video recorded" while he was strip searched failed to state a Fourth Amendment claim); *Peek v. City of N.Y.*, No. 13-CV-4488 (AJN), 2014 U.S. Dist. LEXIS 117516, at * 5 (S.D.N.Y. Aug. 18, 2014) (dismissing a Fourth Amendment claim based on a strip search in front of a camera because "[w]ithout more . . . the presence of a camera at a strip search does not amount to a constitutional violation").

Moreover, although Plaintiff seems to allege that recording strip searches with a body camera violates LMDC policy and procedure, the failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation).

In light of this jurisprudence, the Court finds that Plaintiff's allegations that he was strip searched "on body cameras" fails to establish a violation of his constitutional rights.

### e. Failure to Respond to Grievances

Plaintiff next alleges that he has filed several grievances with Defendant Wingate but that she has not answered them. Because the Sixth Circuit had held that there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure[,]" *Walker v.*

*Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005), the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### f. The Prison Rape Elimination Act (PREA)/Verbal Sexual Harassment

Plaintiff also claims that he talked to non-defendant McNeese about a "PREA" incident where the "SORT staff where talking about me bleeding from my rectum and making funny jokes about it and lying saying I got contraband and my rectum." It is unclear what type of claim Plaintiff is attempting to make based upon this allegation. However, to the extent the he is asserting a claim under the PREA, he fails to state a claim upon which relief may be granted because courts have routinely held that the PREA does not create rights enforceable by a private party in a civil action. *Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) (collecting cases); *see also Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 U.S. Dist. LEXIS 114727, at *5 (W.D. Ky. Aug. 19, 2014) ("Although not addressed by the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.") (collecting cases).

On the other hand, if Plaintiff is attempting to state a claim based upon verbal sexual harassment, his claim fails because the Sixth Circuit has held that a prison official's use of harassing or degrading language, although unprofessional and deplorable, does not create an intolerable prison confinement in violation of the Eighth Amendment. *See, e.g.*, *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *see also Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (same).

Thus, the Court will dismiss Plaintiff's claim based upon these allegations for failure to state a claim upon which relief may be granted.

### g. Attorney-Client Privilege

Finally, Plaintiff alleges that on one occasion, when his attorneys came to see him, "the SORT staff sat right outside the doors listening to every word my attorneys said to me that supposed to be confidential in violation of my constitutional rights."

A "violation of the attorney-client relationship does not rise to the level of a constitutional violation." *Long v. Cty. of Saginaw*, No. 12-CV-15586, 2013 U.S. Dist. LEXIS 159974, at *19 (E.D. Mich. Nov. 8, 2013). "The attorney-client privilege is a creation of the common law, not the federal constitution." *Williams v. Campbell*, No. 2:15-CV-12914, 2016 U.S. Dist. LEXIS 161669, at *18 (E.D. Mich. Nov. 22, 2016) (citing *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010)). "As such, a violation of the attorney-client privilege is not itself a 'violation of the United States Constitution or its laws and treaties.'" *Sanborn*, 629 F.3d at 575 (internal quotation omitted) (alteration in original). "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Horacek v. Seaman*, No. 08-10866, 2009 U.S. Dist. LEXIS 82451 at *29 (E.D. Mich. Aug. 20, 2009) (quoting *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985) (citing *Dye v. Hofbauer*, 197 F. App'x 378, 383 (6th Cir. 2006)).

Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### h. Conditions of Confinement

In his original complaint, Plaintiff alleged that he was "exposed to mold, feces, and urine on a daily basis." In the amended complaint, Plaintiff claims that there is "still mold in this dorm showers, the cells, feces that hasn't been clean for months . . ." and "I've been deprive to clean my cell for weeks."

In its prior Memorandum Opinion and Order dismissing Plaintiff's claims against the Metro Defendants, the Court observed that although these allegations may arguably satisfy the objective component of an Eighth Amendment claim, Plaintiff had failed to connect these allegations to an act or omission by any Metro Defendant and, therefore, had failed to plead that any Metro Defendant was deliberately indifferent to his health or safety. It was for this reason that the Court granted the Metro Defendants' motion to dismiss regarding this claim. Here, the Court finds that because the amended complaint likewise fails to connect any Metro Defendant to this claim, the claim must be dismissed for failure to state a claim upon which relief may be granted.

### i. Defendants Logsdon, Brown, and Collins

Plaintiff alleges that he has requested to see Defendants Logsdon, Brown, and Collins "to no avail They (never) make their daily rounds I've not seen any of these people in over 2 months when policy says they [shall] make daily rounds." The Court can discern no constitutional violation based upon this allegation. As explained above, the failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. at 481-82. Thus, the Court will dismiss Plaintiff's claims against these Defendants for failure to state a claim upon which relief may be granted.

### j. Defendant Clark

Finally, the Court finds that Plaintiff has failed to state a claim against Defendant Clark, because Plaintiff does not make specific allegations against him in the amended complaint. *See, e.g., Twombly*, 550 U.S. at 544; *Lanman v. Hinson*, 529 F.3d at 684; *Frazier v. Michigan*, 41 F. App'x at 764.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official and individual-capacity claims against the Medical Defendants, which are Defendants Davis, Smith, and White, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. As such, the **Clerk of Court** is **DIRECTED** to **terminate these Defendants as parties to this action**.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against the Metro Defendants and his claims based upon canine searches, a false disciplinary write-up, strip searches, the failure to respond to grievances, PREA, verbal sexual harassment, violation of the attorney-client privilege, and his conditions of confinement are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's individual-capacity claims against Metro Defendants Bolton, Durham, Baker, Wedding, Wingate, Logdson, Brown, Collins, and Clark are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. As such, the **Clerk of Court** is **DIRECTED** to **terminate these Defendants as parties to this action**.

As indicated above, the Court will allow individual-capacity First Amendment retaliation claims to proceed against Defendants Ashby and Walker and individual-capacity First Amendment legal mail claims to proceed against Defendants Ashby and Redmon. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

The Court will enter a separate Scheduling Order to govern the development of the continuing claims.

Date: November 6, 2019

Charles R. Simpson III, Senior Judge
United States District Court

cc: Plaintiff, *pro se*
     Counsel of Record
4411.011